**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE, on behalf of himself and
others similarly situated,

*Plaintiff,*

v.

NEW YORK UNIVERSITY,

*Defendant.*

No. 23 Civ. 10515 (VSB) (SN)

**ORAL ARGUMENT REQUESTED**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### NEW YORK UNIVERSITY'S MOTION TO DISMISS THE COMPLAINT

Roberta A. Kaplan
Gabrielle E. Tenzer
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
ajain@kaplanhecker.com

*Attorneys for Defendant*
*New York University*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT BACKGROUND ........................................................................................ 3

   I.    Plaintiff's Allegations ......................................................................... 3

   II.   Procedural History .............................................................................. 6

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT ..................................................................................................................... 8

   I.    Plaintiff Lacks Standing to Litigate His Speculative Claims of Hypothetical Future Discrimination ............................................................................ 9

   II.   Plaintiff's Premature Challenge Should Be Dismissed as Unripe ............................... 12

   III.  Plaintiff Fails to State Any Plausible Claim for Relief Under *Twombly* and *Iqbal* ....... 14

       A.   Plaintiff Fails to State Any Plausible Claim of Discrimination .......................... 15

       B.   Plaintiff Fails to Plead Intentional Discrimination by NYU ............................... 20

       C.   Plaintiff Fails to State Claims Under Any Other Statute ...................................... 22

CONCLUSION ................................................................................................................. 24

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)..............................................................................................17

*Akyar v. TD Bank US Hold. Co.*,
    No. 18 Civ. 379, 2018 WL 4356734 (S.D.N.Y. Sept. 12, 2018)........................................23

*Albert v. Carovano*,
    851 F.2d 561 (2d Cir. 1988).....................................................................................18

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..............................................................................................20

*Allen v. Credit Suisse Sec. (USA), LLC*,
    895 F.3d 214 (2d Cir. 2018).....................................................................................17

*Amidax Trading Grp. v. S.W.I.F.T. SRCL*,
    671 F.3d 140 (2d Cir. 2011).......................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................*passim*

*Authors Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014)......................................................................................13

*Bar-Levy v. Mitchell*,
    No. 22 Civ. 3408, 2022 WL 14746399 (S.D.N.Y. Oct. 25, 2022) .....................................18

*Bd. of Regents of Univ. of Wis. Sys. v. Southworth*,
    529 U.S. 217 (2000)..............................................................................................20

*Bejjani v. Manhattan Sheraton Corp.*,
    No. 12 Civ. 6618, 2013 WL 3237845 (S.D.N.Y. June 27, 2013)......................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................*passim*

*Calcano v. Swarovski N. Am. Ltd.*,
    36 F.4th 68 (2d Cir. 2022) ........................................................................................7

*Campbell v. Columbia Univ.*,
    No. 22 Civ. 10164, 2023 WL 6038024 (S.D.N.Y. Sept. 15, 2023).....................................3

*Carver v. City of New York*,
    621 F.3d 221 (2d Cir. 2010) ................................................................ 9

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................ 10, 11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................ 9

*Comer v. Cisneros*,
    37 F.3d 775 (2d Cir. 1994) ................................................................ 12

*Conn. Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021) ................................................................ 10

*Cortez v. Stillwell Ready-Mix & Bldg. Materials, L.L.C.*,
    No. 20 Civ. 7775, 2022 WL 137465 (S.D.N.Y. Jan. 13, 2022) ......................... 22

*Craig v. Boren*,
    429 U.S. 190 (1976) ................................................................ 17

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ................................................................ 22

*Dejesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013) ................................................................ 8, 17

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) ................................................................ 15, 19

*Doe v. NYU*,
    438 F. Supp. 3d 172 (S.D.N.Y. 2020) ................................................ 20

*Douek v. Citibank*,
    No. 20 Civ. 8074, 2021 WL 3604761 (S.D.N.Y. Aug. 12, 2021) ....................... 22

*Fac., Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*,
    No. 18 Civ. 9184, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) ................. *passim*

*Fac., Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*,
    11 F.4th 68 (2d Cir. 2021) ................................................................ 1, 23

*Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*,
    No. 18 Civ. 12105, 2019 WL 3754023 (D. Mass. Aug. 8, 2019) ................. 1, 18, 20

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank,*
    552 F. App'x 13 (2d Cir. 2014) ...................................................... 14, 19

*Fisher v. Univ. of Tex. at Austin,*
    579 U.S. 365 (2016) ..................................................................... 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ....................................................................... 7

*Goonewardena v. New York,*
    475 F. Supp. 2d 310 (S.D.N.Y. 2007) .......................................... 21

*Green Island Power Auth. v. FERC,*
    577 F.3d 148 (2d Cir. 2009) ........................................................... 9

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) ..................................................................... 16

*Healy v. James,*
    408 U.S. 169 (1972) ..................................................................... 20

*Isaacs v. Bowen,*
    865 F.2d 468 (2d Cir. 1989) ......................................................... 14

*Kajoshaj v. N.Y.C. Dep't of Educ.,*
    543 F. App'x 11 (2d Cir. 2013) .................................................... 18

*Liu v. Democratic Nat'l Comm.,*
    No. 21 Civ. 767, 2021 WL 5351886 (S.D.N.Y. Nov. 15, 2021) ................................... 7, 12

*Liu v. Democratic Nat'l Comm.,*
    No. 21-3021, 2022 WL 4372587 (2d Cir. Sept. 22, 2022) ................................. 7, 13

*Marchi v. Bd. of Coop. Educ. Servs. of Albany,*
    173 F.3d 469 (2d Cir. 1999) ..................................................... 7, 13

*Northeast Florida Chapter of Associated General Contractors of America v.*
    *City of Jacksonville,*
    508 U.S. 656 (1993) ..................................................................... 12

*Otrompke v. First Dep't Comm. on Character & Fitness,*
    No. 22 Civ. 4676, 2023 WL 7399840 (S.D.N.Y. Nov. 8, 2023) ......................... 12

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.,*
    712 F.3d 705 (2d Cir. 2013) ................................................. 2, 15, 19

iv

*PK Music Performance, Inc. v. Timberlake*,
    No. 16 Civ. 1215, 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) ......................................... 3

*Pungitore v. Barbera*,
    506 F. App'x 40 (2d Cir. 2012) .......................................................................................... 9

*Ray v. Ray*,
    799 F. App'x 29 (2d Cir. 2020) ........................................................................................ 19

*Regents of Univ. of Cal. v. Bakke*,
    438 U.S. 265 (1978) .......................................................................................................... 16

*Roberts v. Bassett*,
    No. 22-622, 2022 WL 16936210 (2d Cir. Nov. 15, 2022) ........................................... 11, 12

*Roberts v. McDonald*,
    143 S. Ct. 2425 (2023) ...................................................................................................... 11

*Rolon v. Henneman*,
    517 F.3d 140 (2d Cir. 2008) .......................................................................................... 8, 17

*Ruderman v. Police Dep't of City of N.Y.*,
    857 F. Supp. 326 (S.D.N.Y. 1994) .................................................................................... 18

*Ruiz v. New Avon LLC*,
    No. 18 Civ. 9033, 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019) ........................................ 8

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) .............................................................................................. 23

*Simmonds v. I.N.S.*,
    326 F.3d 351 (2d Cir. 2003) .............................................................................................. 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................................ 7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) .................................................................................................. *passim*

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................................ 9

*Trump v. New York*,
    141 S. Ct. 530 (2020) ...................................................................................... 10, 11, 12, 13

*Vengalattore v. Cornell Univ.*,
    36 F.4th 87 (2d Cir. 2022) ................................................................ 22

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................... 7

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
    323 F. Supp. 3d 501 (S.D.N.Y. 2018) ............................................... 18

*Weser v. Glen*,
    190 F. Supp. 2d 384 (E.D.N.Y. 2002) .............................................. 11

*Weser v. Glen*,
    41 F. App'x 521 (2d Cir. 2002) ........................................................ 11

*Yamashita v. Scholastic Inc.*,
    936 F.3d 98 (2d Cir. 2019) ............................................................... 23

*Yang v. Eastman Sch. of Music*,
    No. 21-1482, 2022 WL 1040418 (2d Cir. Apr. 7, 2022) ................... 22

*Zeno v. Pine Plains Cent. Sch. Dist.*,
    702 F.3d 655 (2d Cir. 2012) ............................................................. 22

**Statutes**

42 U.S.C. § 1983 .......................................................................... 5, 8, 14, 22

**Regulations**

34 C.F.R. § 106.3(b) ............................................................................. 17

**Rules**

Fed. R. Civ. P. 8 ...................................................................... 2, 14, 19, 22

Fed. R. Civ. P. 11 ............................................................................. 8, 20

Fed. R. Civ. P. 12(b)(1) ........................................................................ 7

Fed. R. Civ. P. 12(b)(6) ........................................................................ 7

Fed. R. Civ. P. 15(a) ........................................................................... 23

**Other Authorities**

NYU Law Review, *Membership Selection*,
     https://www.nyulawreview.org/about/membership-selection/ ............................... 3, 4, 5, 10

NYU Law, *2023-2024 Academic Calendar*,
     https://www.law.nyu.edu/academicservices/academiccalendar/2023-2024-academic-
     calendar ......................................................................................................................... 3

NYU, *Non-Discrimination and Anti-Harassment Policy and Complaint Procedures for
     Students* (Aug. 16, 2021),
     https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/non-
     discrimination-and-anti-harassment-policy-and-complaint-proc.html ............................... 21

Wright & Miller,
     Federal Practice & Procedure § 1487 ................................................................................. 23

## PRELIMINARY STATEMENT

This case is a hammer in search of a nail. Back when controlling Supreme Court precedent squarely approved of holistic university affirmative action programs, Plaintiff's counsel sued New York University ("NYU") and Harvard University on behalf of a concocted membership organization, alleging (among other things) that the editor selection processes of each university's flagship law journal violated Title VI and Title IX, and demanding (among other things) that federal courts impose unprecedented "preclearance" regimes on the selection processes of these student-run law journals while simultaneously compelling the journals to "explicitly disavow[] *any* consideration of race, sex, sexual orientation, or gender identity or expression."[1] Both cases were dismissed on the pleadings, not only because the plaintiff organization lacked standing but also because it badly failed to state claims on the merits. *See Fac., Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*, No. 18 Civ. 9184, 2020 WL 1529311, at *5-8 (S.D.N.Y. Mar. 31, 2020) ("*FASORP II*"), *aff'd*, 11 F.4th 68 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2813 (2022); *Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, No. 18 Civ. 12105, 2019 WL 3754023, at *5-10 (D. Mass. Aug. 8, 2019) ("*FASORP I*").

History repeats itself. In the wake of *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"), counsel has now filed a putative class action complaint against NYU on behalf of a pseudonymous Plaintiff seeking equally unprecedented relief based on even more fanciful speculation—all before the NYU Law Review ("Law Review") has undergone a cycle of post-*SFFA* editor selection. Despite a conspicuous lack of any facts to remotely (let alone plausibly) suggest that either NYU or the Law Review has

---

[1] First Am. Compl. ¶¶ 49-52, 70, *Fac. Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*, No. 18 Civ. 9184 (S.D.N.Y.), ECF 39 (emphasis added); First Am. Compl. ¶¶ 46-48, 59, *Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, No. 18 Civ. 12105 (D. Mass.), ECF 33 ("*FASORP I* Compl.") (emphasis added).

violated or will suddenly violate the law, Plaintiff's complaint alleges in one conclusory sentence that "[t]he NYU Law Review is using . . . 'statements of interest' and résumés to give preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people when selecting its members." Compl. ¶ 15.[2] During a conference on Plaintiff's second motion for expedited discovery, when asked if Plaintiff "ha[d] any facts to support" this bare assertion, counsel responded: "That is the fact. That is the fact." Jan. 10, 2024 Conf. Tr. (Ex. A) at 8:1-3. At the same time, referring to that same paragraph, counsel insisted that discovery was necessary so Plaintiff and his lawyers could "find out" if "our allegation [is] correct" and thereby "move forward with some knowledge as opposed to just trying to figure it out as we go along." *Id.* at 14:25-15:1, 15:21-22.

Such rank speculation is not a sufficient basis to subject NYU to the costs and burdens of litigation. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Were it otherwise, every Title VI recipient (and every student-run program of a Title VI recipient) that employed affirmative action when it was lawful or that states a general, lawful commitment to diversity would face resource-intensive litigation, intrusive discovery, judicial "preclearance," and drastic restrictions on its admissions practices and other related decision-making. Compl. ¶ 27. In any event, this Court should dismiss Plaintiff's complaint because the peer discrimination he predicts relies on a highly attenuated chain of theoretical possibilities (destroying his Article III standing) and his claims are hopelessly premature

---

[2] Citations to "Compl. ¶ __" refer to paragraphs of the complaint, ECF 1. Citations to "Ex. __" refer to exhibits to the Declaration of Gabrielle E. Tenzer, dated January 29, 2024, accompanying NYU's motion. Unless indicated otherwise, citations to "ECF __" refer to docket entries in this case.

(rendering them unripe). For these reasons and others discussed below, this Court should end Plaintiff's blatant fishing expedition and dismiss the complaint with prejudice.

## RELEVANT BACKGROUND

The Law Review is an academic journal operated by students at the NYU School of Law ("NYU Law"). *See* Compl. ¶ 5. At the end of each academic year, rising second-year students at NYU Law can apply to serve as editors on the Law Review and other student-run journals.[3] Editor selection, which is run by students, has historically begun with a writing competition following the completion of final exams.[4] This year, finals will conclude on May 10, 2024.[5] As is common among student-run law journals, the Law Review's editor selection policies and procedures can change from year to year and are subject to revision by each year's student leadership team.

### I.  Plaintiff's Allegations

According to the seven-page class action complaint, Plaintiff—who is currently proceeding under pseudonym—is a first-year student at NYU Law. *See* Compl. ¶ 16. Plaintiff describes himself as white, heterosexual, cisgender, and male. *Id.* ¶ 18. He alleges that he "intends to apply for membership on the . . . Law Review in the summer of 2024." *Id.* ¶ 17.

Plaintiff's "statement of facts" unfolds in three phases. *First,* Plaintiff describes the Law Review's selection policies prior to the Supreme Court's decision in *SFFA*—a time when he was not a law student. *See id.* ¶ 3. Plaintiff does not specify when these editor selection policies were

---

[3] *See* NYU Law Review, *Membership Selection,* https://www.nyulawreview.org/about/membership-selection/ (last visited Jan. 26, 2024). Plaintiff's complaint purports to attach two printouts of this page as exhibits—one prior to *SFFA, see* Compl. ¶ 9, and one after *SFFA, see id.* ¶ 13—but neither appears to have been filed on the docket. In any event, the Law Review's current website is incorporated by reference. *See id.* ¶¶ 13-14; *Campbell v. Columbia Univ.,* No. 22 Civ. 10164, 2023 WL 6038024, at *4 (S.D.N.Y. Sept. 15, 2023) (Broderick, J.).

[4] *See* NYU Law Review, *Membership Selection, supra* note 3.

[5] *See* NYU Law, *2023-2024 Academic Calendar,* https://www.law.nyu.edu/academicservices/academiccalendar/2023-2024-academic-calendar (last visited Jan. 26, 2024). The Court may take judicial notice of this information on NYU's public website, as its authenticity is not reasonably in question. *See, e.g., PK Music Performance, Inc. v. Timberlake,* No. 16 Civ. 1215, 2018 WL 4759737, at *4 (S.D.N.Y. Sept. 30, 2018) (Broderick, J.).

in place, alleging only that "the . . . Law Review has been using race and sex preferences" "[i]n recent years" and that these specific policies were utilized at some point "[b]efore" *SFFA*. *Id.* ¶¶ 7, 9-12. Nor does he allege that these policies remained static from year to year.

Plaintiff alleges that the Law Review used to select 38 of its 50 new editors each year based solely on a writing competition, grades, or a combination of the two. *Id.* ¶ 9. He further alleges that the Law Review would subsequently consider personal statements and résumés in filling the remaining 12 editor slots, and that the Law Review (in its own words) "evaluate[d] personal statements in light of various factors, including (but not limited to) race, ethnicity, gender, sexual orientation, national origin, religion, socio-economic background, ideological viewpoint, disability, and age," while encouraging applicants to "discuss any personal characteristics, background, unique experiences, or qualifications that the applicant would like to bring to the attention of the Selection Committee" "[w]ith regard to these and other aspects of diversity." *Id.* ¶¶ 10-12. Although Plaintiff mislabels this as a "'diversity' quota," *id.* ¶ 11, he does not allege that any of these slots were limited to students of any particular background (because, in fact, they were not—as Plaintiff's own description makes clear).

*Second*, Plaintiff alleges that after the Supreme Court's decision in *SFFA*, the Law Review modified its website, removing what he calls the "diversity set-aside." *Id.* ¶ 13. Plaintiff states that the website continues to note the Law Review's general "commitment to staff diversity," *id.* ¶ 14, but the website makes no mention of race, sex, gender identity, or sexual orientation, *see* NYU Law Review, *Membership Selection*, *supra* note 3. The website states that the Law Review allows (but does not require) student applicants to submit résumés and statements of interest to help the Law Review "realize its commitment to staff diversity" and receive "a more comprehensive view of who you are as an individual." Compl. ¶ 14.

4

*Third*, and finally, Plaintiff speculates (without any factual basis or elaboration) that the changes in the Law Review's selection procedures outlined on its website constitute "an attempt to obscure the details of its membership-selection process." *Id.* ¶ 13. And Plaintiff asserts that despite these changes, the students on the Law Review are "using . . . 'statements of interest' and résumés to give preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people" and that the Law Review "intends to continue these unlawful and discriminatory practices until it is enjoined from doing so." *Id.* ¶ 15.[6]

Based on these unsupported and conclusory contentions, Plaintiff brings purported claims "under Title VI, Title IX, 42 U.S.C. § 1983, and any other law that might supply a cause of action for the requested relief." *Id.* ¶ 26. The "requested relief," in turn, *id.*, includes a demand that Law Review students seek some sort of "preclearance" from this Court before selecting any new members or editors, *id.* ¶ 27. Plaintiff further seeks a court order compelling the Law Review not only to comply with applicable law, but to "establish a new membership-selection policy that is based exclusively on academic" metrics; publicly and "explicitly disavow[] any consideration of race, sex, sexual orientation, or gender identity or expression" in its selection process; and "certify" to this Court on an annual basis "that the Law Review's selection of . . . new members . . . was not in any way affected or influenced by race, sex, sexual orientation, or gender identity." *Id.* And Plaintiff purports to bring suit "on behalf of a class of all present and future students at NYU Law School who: (a) intend to apply for membership on the NYU Law Review, and (b) are white, heterosexual men who identify as men, consistent with their biologically assigned sex." *Id.* ¶ 25.[7]

---

[6] Plaintiff's naked assertion that the Law Review "is using" statements of interest and résumés contradicts his own complaint, which elsewhere alleges that the Law Review's selection process will begin in "Summer of 2024." Compl. ¶ 17; *see also* NYU Law Review, *Membership Selection*, *supra* note 3. Thus, there are no applications (and therefore no statements of interest or résumés) for the Law Review to "us[e]" at this time. *Contra* Compl. ¶ 15.

[7] Although Plaintiff asserts that the Law Review will "give preferential treatment to . . . non-Asian racial minorities," Compl. ¶ 15, his proposed class does not include Asian or Asian American students, *see id.* ¶ 25.

## II.    Procedural History

Plaintiff first attempted to file this lawsuit on October 19, 2023, but the case was dismissed because he failed to comply with this District's ECF Rules. *See* Order, *Doe v. NYU*, No. 23 Civ. 9187 (S.D.N.Y.), ECF 5. Plaintiff tried again on October 26, 2023, but that attempt, too, was deficient. *See* Administrative Closing Order, *Doe v. NYU*, No. 23-mc-398 (S.D.N.Y.), ECF 4. On December 1, 2023, Plaintiff's case was finally docketed. Along the way, Judge Marrero granted Plaintiff's ex parte motion to proceed pseudonymously, without prejudice to NYU's right to challenge Plaintiff's pseudonymity at the appropriate juncture. *See* Order, *id.*, ECF 7.[8]

After all this, Plaintiff moved twice for expedited discovery, warning that he and members of his putative class would be "unable to obtain relief" "[a]bsent . . . discovery." *See* ECF 10-1 at 3; ECF 25-1 at 3. Magistrate Judge Netburn denied Plaintiff's first motion as premature because he had not yet served NYU. *See* ECF 13. Magistrate Judge Netburn held a conference on Plaintiff's second motion, *see* ECF 33, at which Plaintiff's counsel proved unable to identify any fact in support of his central assertion that the Law Review would give preferential treatment to editors of certain backgrounds, *see* Ex. A at 8:1-3, and instead argued that expedited discovery would allow Plaintiff "to find out" if "our allegation [is] correct" and "test whether the [Law Review's] intent is" as alleged, *see id.* at 14:25-15:1, 15:14. Magistrate Judge Netburn denied Plaintiff's motion again, *see* ECF 32, noting that consideration of "statements of interest or other expository pieces" was "presumptively acceptable" under *SFFA*, and observing *sua sponte* that Plaintiff's challenge "may not be ripe," Ex. A at 8:25-9:1, 13:3-4.

---

[8] As explained in NYU's prior submissions, Plaintiff's pseudonymity would be prejudicial to NYU if the parties were to engage in discovery or to brief a class certification motion. *See* ECF 20 at 4 n.1; ECF 28 at 11. Accordingly, NYU reserves the right to oppose Plaintiff's pseudonymity should this case proceed beyond the pleading stage.

## LEGAL STANDARD

Article III's case-or-controversy requirement demands that a plaintiff establish standing, which requires (among other things) that he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The plaintiff must demonstrate that he "had . . . standing at the outset of the litigation." *Id.* "[T]o survive [a] Rule 12(b)(1) motion to dismiss" for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SRCL*, 671 F.3d 140, 145 (2d Cir. 2011); *accord Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (explaining that "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975))). A court deciding a Rule 12(b)(1) motion "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 679).

The doctrine of ripeness prevents federal courts "from entangling themselves in abstract disagreements" over matters that are premature for review. *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999). As with standing, "the plaintiff bears the burden of showing that a dispute is ripe." *Liu v. Democratic Nat'l Comm.*, No. 21 Civ. 767, 2021 WL 5351886, at *3 (S.D.N.Y. Nov. 15, 2021), *aff'd*, No. 21-3021, 2022 WL 4372587 (2d Cir. Sept. 22, 2022).

Finally, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Again, the

complaint "must . . . contain more than naked assertion[s] devoid of further factual enhancement." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013) (internal quotation marks omitted). Although the Court "accept[s] all the factual allegations . . . as true and draw[s] all reasonable inferences in favor of the plaintiff," *id.*, it is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (internal quotation marks omitted). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations . . . as true." *Ruiz v. New Avon LLC*, No. 18 Civ. 9033, 2019 WL 4601847, at *13 n.12 (S.D.N.Y. Sept. 22, 2019) (Broderick, J.).

## ARGUMENT

Plaintiff's pleading is grossly deficient for several independent, but interrelated, reasons. *First*, Plaintiff lacks standing: Neither Plaintiff's allegations concerning the Law Review's prior (and then-lawful) editor selection policy, nor his baseless conjecture as to the Law Review's potential future policy, establish that he faces any actual or imminent injury. *Second*, Plaintiff's claims are unripe: As his pleading amply illustrates, the Court cannot coherently rule on the legality of the never-before-implemented, unelaborated, and non-final policy he hopes to challenge. *Third*, and perhaps most obviously, Plaintiff fails to state any cognizable claim for relief. His factual descriptions of lawful conduct do not support his conclusory belief that the students on the Law Review will suddenly pivot to unlawfully violating Title VI as interpreted in *SFFA*, let alone Title IX; he does not plead any knowledge or intent on the part of NYU itself, as he must in order to sue the University under either statute; and his frivolous attempts to plead additional claims under Section 1983 or "any other law that might supply a cause of action," Compl. ¶ 26, underscore his utter disregard for the pleading standard and attorneys' obligations under Rule 11.

I.     **Plaintiff Lacks Standing to Litigate His Speculative Claims of Hypothetical Future Discrimination**

Plaintiff lacks Article III standing because he "relies on a highly attenuated chain of possibilities" and therefore cannot establish injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Because Plaintiff seeks prospective relief, he "must show a likelihood that he will be injured in the future" to establish standing. *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010); *accord, e.g.*, *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012). And his concern of future injury can satisfy the imminence requirement of standing only "if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 410, 414 n.5). The entire purpose of Article III's requirement of imminence is "to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Green Island Power Auth. v. FERC*, 577 F.3d 148, 160 (2d Cir. 2009). Accordingly, a mere allegation "of *possible* future injury" is "not sufficient." *Clapper*, 568 U.S. at 409.

The hypothetical injury Plaintiff pleads is plainly insufficient to satisfy this bedrock requirement. For harm to befall Plaintiff in the manner he predicts, several things must happen: (1) the Law Review must select student leadership that does not intend to comply with *SFFA*; (2) notwithstanding *SFFA*'s change in law and the shift to a facially neutral policy on the Law Review's website, the Law Review's student leadership must indeed fail to comply with *SFFA* and implement a policy in violation of that decision and other applicable law; (3) Plaintiff must apply to the Law Review; (4) Plaintiff must fail to gain admission to the Law Review; and (5) Plaintiff's peers on the Law Review must also unlawfully deny him membership based on his race and other identity characteristics, notwithstanding other aspects of diversity (such as socioeconomic status, ideological viewpoint, or unique experiences) that may assist his application

if he chooses to highlight them in a statement of interest or résumé. This strained theory of injury in fact is "riddled with contingencies and speculation that impede judicial review." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam).

Most notably, Plaintiff predicts in his complaint that students on the Law Review will "give preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people when selecting its members." Compl. ¶ 15. But this Court "need not credit" such "conclusory statements" in assessing standing. *Conn. Parents Union v. Russell-Tucker,* 8 F.4th 167, 172 (2d Cir. 2021). And the "factual context" of Plaintiff's complaint, *id.*, underscores that his concern is purely speculative. Plaintiff alleges that the Law Review previously had a policy of considering these aspects of applicants' identities (among several other aspects of diversity, as well as grades, writing competition performances, statements of interest, and résumés) in the selection of a subset of editors. *See* Compl. ¶¶ 9-12. But all of this occurred prior to *SFFA*, when governing precedent allowed for holistic affirmative action programs at universities. *See, e.g.*, *FASORP II*, 2020 WL 1529311, at *7 (declining to assume that the Law Review's "facially holistic [pre-*SFFA*] process" was somehow "an unlawful quota or set-aside program"). Such lawful conduct "does nothing to establish a real and immediate threat" that Plaintiff will face unlawful discrimination after *SFFA*. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Moreover, Plaintiff admits that the Law Review has since "changed its website" to remove mention of these factors. Compl. ¶ 13; NYU Law Review, *Membership Selection*, *supra* note 3.

The Law Review's ongoing, generalized commitment to diversity, *see* Compl. ¶ 14, also fails to transform Plaintiff's prognostications into certainly impending harm. It is beyond dispute that diversity of "socio-economic background, ideological viewpoint," and many other "personal characteristics" or "unique experiences"—all of which the Law Review described as important

aspects of "staff diversity," *id.* ¶ 11, even prior to *SFFA*—do not implicate any relevant nondiscrimination laws or trigger heightened judicial scrutiny. Moreover, where an entity voices a "desire for diversity," this alone does not "favor or create a less rigorous admissions standard for members of under-served and under-represented groups, nor does it imply that seats are set aside for members of such groups." *Weser v. Glen*, 190 F. Supp. 2d 384, 398 (E.D.N.Y.), *aff'd*, 41 F. App'x 521 (2d Cir. 2002). Accordingly, "[a]ny prediction how [the Law Review] might eventually implement [its] general statement" in support of diversity "is 'no more than conjecture' at this time." *Trump*, 141 S. Ct. at 535 (quoting *Lyons*, 461 U.S. at 108). All the more so because, as a matter of common sense, the Law Review is free to revise and amend the details of any selection policy in the several months to come before it is applied to Plaintiff. *See* Compl. ¶ 17 (alleging that Plaintiff "intends to apply for membership on the NYU Law Review in the summer of 2024").

Courts routinely reject injury-in-fact theories that, like the one asserted here, are so attenuated from a plaintiff's non-conclusory factual allegations. *See, e.g.*, *Roberts v. Bassett*, No. 22-622, 2022 WL 16936210, at *2 (2d Cir. Nov. 15, 2022), *cert. denied sub nom. Roberts v. McDonald*, 143 S. Ct. 2425 (2023) (concluding that a theory of standing to challenge alleged race discrimination was impermissibly attenuated when plaintiffs, before being injured, would need to test positive for COVID-19 during a treatment shortage and then seek care from a provider who adhered to the relevant state guidance); *FASORP II*, 2020 WL 1529311, at *6 (holding that a theory of injury involving a chain of possibilities with several links, including whether members of the plaintiff organization would actually submit articles to the Law Review or apply for faculty positions at NYU, was "highly attenuated" and insufficient to confer standing). Indeed, other courts in this District have rightly dismissed suits with similarly speculative theories of injury. For instance, Judge Liman dismissed a suit for lack of imminent injury (and, therefore, standing) where

the plaintiff attempted to challenge a political party's forthcoming delegate selection process based on his speculative inference that the defendant would, for a future election cycle, adopt rules akin to those in prior cycles. *See Liu*, 2021 WL 5351886, at *3 ("[T]here is no guarantee regarding the rule that the DNC will adopt; Liu's Complaint rests upon speculation about the DNC's future actions."). Similarly, Magistrate Judge Cott recently recommended dismissal where a prospective bar applicant, like Plaintiff here, simply speculated "that he *might* be injured or discriminated against at some point in the future by possibly being denied membership to the bar." *Otrompke v. First Dep't Comm. on Character & Fitness,* No. 22 Civ. 4676, 2023 WL 7399840, at *5 (S.D.N.Y. Nov. 8, 2023).

Here, too, determining whether the Law Review will seek to promote diversity in a "manner substantially likely to harm" Plaintiff, despite the Supreme Court's directive in *SFFA* and the facially neutral language on the Law Review's website, would "involve[] a significant degree of guesswork," "making any prediction about future injury just that—a prediction." *Trump*, 141 S. Ct. at 536. Plaintiff thus fails to plead injury in fact, and dismissal is warranted.[9]

## II. Plaintiff's Premature Challenge Should Be Dismissed as Unripe

Relatedly, Plaintiff's complaint falls short because his challenge to the Law Review's yet-to-be-implemented policy is unripe. In determining ripeness, courts look to both the fitness of the issues for judicial decision and the hardship that would result from withholding judicial

---

[9] Plaintiff independently fails to establish standing because, setting aside the speculative nature of his claims, he cannot allege a cognizable injury inflicted by NYU, a private party. Plaintiff has neither applied to the Law Review nor been rejected from it, so he cannot claim injury from a discriminatory rejection of his application. Recognizing as much, Plaintiff cites *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), to argue that "den[ial] [of] an equal opportunity to compete" suffices to establish "injury in fact" even absent an application or rejection. Compl. ¶ 19. But *Jacksonville* is limited by its own terms to instances "[w]hen *the government* erects a barrier." *Jacksonville*, 508 U.S. at 666 (emphasis added); *see also Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994) (same); *Roberts*, 2022 WL 16936210, at *2 (identifying the existence of "a government-erected barrier" as an "element[] necessary for standing under" *Jacksonville*). Because "all the allegedly discriminatory policies here are implemented either by NYU, the Law School or the Law Review, none of which are governmental entities," Plaintiff's "[r]eliance on *Jacksonville* does not cure this defect." *FASORP II*, 2020 WL 1529311, at *6.

consideration. *See, e.g., Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003). A case may be unripe in a constitutional sense, a "more flexible" prudential sense, or both; here, Plaintiff's premature claims are unripe under both of these "overlapping" standards. *Id.* at 356-57. For the same reasons Plaintiff cannot show injury in fact for purposes of Article III standing, he does not allege cognizable hardship for purposes of ripeness: He alleges nothing more than a "mere possibility of future injury," *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 105 (2d Cir. 2014); *Simmonds*, 326 F.3d at 360, as opposed to a "direct and immediate dilemma" giving rise to a "credible fear" of harm, *Marchi*, 173 F.3d at 478-79. And, more fundamentally, the issues he attempts to raise are plainly unfit for decision at this time.

With respect to his allegations regarding the Law Review's "facially holistic" pre-*SFFA* policies, *FASORP II*, 2020 WL 1529311, at *7, Plaintiff again provides no reason to infer that the selection "rules used in prior [cycles] also will be used in 2024," *Liu*, 2022 WL 4372587, at *2; *see also HathiTrust*, 755 F.3d at 104 (concluding that claims were unripe where "the record contained no information about whether [an allegedly unlawful] program will be revived and, if so, what it would look like or whom it would affect"). To the contrary, Plaintiff alleges that after *SFFA*, the Law Review *changed* its stated selection policy on its website, which is now facially neutral and thus facially lawful. *See* Compl. ¶ 13.

As for the Law Review's possible consideration of an applicant's résumés and personal statements in support of a generally stated commitment to diversity, *see id.* ¶ 14, these allegations do not even plausibly suggest (much less establish) that Plaintiff will be disadvantaged based on his race, sex, gender identity, or sexual orientation, *see supra* pp. 10-11. Accordingly, for purposes of ripeness, Plaintiff's prediction of discrimination "is 'no more than conjecture' at this time." *Trump*, 141 S. Ct. at 535; *accord, e.g., Marchi*, 173 F.3d at 478 (holding challenge to facially

13

neutral directive unripe where court "would be forced to guess at how [defendant] might apply the directive and to pronounce on the validity of numerous possible applications of the directive, all highly fact-specific and, as of yet, hypothetical"). This is especially true because (again) the Law Review's policies may well change before they are applied to Plaintiff. *See* Compl. ¶ 17; *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989) (affirming dismissal of challenge to agency proposals "subject to change" as unripe). Thus, Plaintiff's "attack is directed at possibilities and proposals only, not at a concrete plan which has been formally promulgated and brought into operation." *Isaacs*, 865 F.2d at 477.

In sum, Plaintiff asks this Court to entertain conjectural claims premised on contingent events, hypothetical facts, and theoretical hardship. That is the very definition of an unripe case. On this basis, too, the Court should dismiss the complaint.

## III.    Plaintiff Fails to State Any Plausible Claim for Relief Under *Twombly* and *Iqbal*

Most clearly of all, even if Plaintiff had standing and his claims were ripe, this Court should dismiss Plaintiff's complaint because he fails to comply with fundamental pleading requirements. Time and again, the Supreme Court, Second Circuit, and courts in this District have cautioned that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Yet Plaintiff fails to do so: Because his "factual allegations describe only actions that are consistent with lawful conduct," his "conclusory allegation" of "culpable conduct is insufficient to make [any of his] claim[s] plausible." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 18 (2d Cir. 2014) (cleaned up). Independently, Plaintiff fails to allege any intentional discrimination by NYU (as opposed to its students), as he must to state a claim against NYU under either Title VI or Title IX. And Plaintiff seemingly does not even attempt to satisfy Rule 8 with his perplexing invocation of Section 1983 and other, unspecified statutes.

Because Plaintiff's claims are all deficient under a straightforward application of *Twombly* and *Iqbal*, his complaint should be dismissed.

### A.     Plaintiff Fails to State Any Plausible Claim of Discrimination

The crux of Plaintiff's complaint—indeed, his sole potential basis for liability under any statute—is his speculation that "[t]he NYU Law Review is using . . . 'statements of interest' and résumés to give preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people" and "intends to continue" doing so. Compl. ¶ 15. But that speculative assertion rests on nothing but unsubstantiated conjecture about future events—not on the actions of Law Review students, NYU's own actions, or any other non-conclusory allegations. Because Plaintiff's unsupported charge of discrimination is "no more than [a] conclusion[]," it is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. That suffices to dismiss Plaintiff's complaint in full.

As multiple Courts of Appeals have explained, "[t]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome." *Pension Benefit Guar. Corp.*, 712 F.3d at 719 (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)). Here, the only *facts* Plaintiff alleges are that (1) the Law Review considered race in selecting editors at a time when governing precedent permitted it to do so, *see* Compl. ¶¶ 8-12, and (2) in the wake of *SFFA*, the Law Review continues to state a general commitment to diversity, without making any reference to race, gender identity, or sexual orientation, *see id.* ¶¶ 13-14.

Neither of these sets of facts gives rise to any reasonable inference that the students on the Law Review will somehow discriminate in the forthcoming editor selection cycle. For starters, the pre-*SFFA* conduct that Plaintiff alleges, *see id.* ¶¶ 8-12, was openly acknowledged by the Law Review and occurred at a time when consideration of race in holistic decision-making was supported by decades of precedent. *See, e.g.*, *Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365 (2016);

*Grutter v. Bollinger*, 539 U.S. 306 (2003); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978) (opinion of Powell, J.). Thus, when Plaintiff's counsel sued NYU over the Law Review's editor selection process prior to *SFFA*, Judge Ramos correctly held that the allegations were "unable to transform the [Law Review's] facially holistic process into . . . an unlawful quota or set-aside program." *FASORP II*, 2020 WL 1529311, at *7. It would be a non sequitur to claim that this history of following the law as it existed before *SFFA* somehow reflects an intent to act illegally now that *SFFA* has changed the law (especially because—as with virtually all student-run publications—the Law Review's student leadership changes every year).

Nor does the Law Review's ongoing commitment to "diversity" and applicants' ability to submit statements of interest or résumés, *see* Compl. ¶¶ 13-14, support any plausible inference of discrimination. To the contrary, there are countless aspects of diversity that do not relate to any legally protected classification—some of which (like diversity in terms of socioeconomic status, ideological viewpoint, or other unique experiences) may well *improve* Plaintiff's chances of admission to the Law Review. *See supra* pp. 10-11. *SFFA* does not change this commonsense understanding or otherwise transform "diversity" into a dirty word. In fact, the Supreme Court in *SFFA* expressly stated that diversity-related "goals" were "commendable"; it simply held that universities could not pursue those goals, however laudable, by using race as a plus or minus factor. 600 U.S. at 214. Even then, nothing in *SFFA* or Title VI "prohibit[s] [covered entities] from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise," so long as "the student [is] treated based on his or her experiences as an individual." *Id.* at 230-31.[10] Moreover, *SFFA* did not interpret Title IX and did

---

[10] For this reason, the unprecedented relief Plaintiff requests—including ordering the Law Review to establish a race-blind, sex-blind, gender identity-blind, and sexual orientation-blind editor selection policy based solely on academic metrics, to submit that policy for the Court's review, and to seek annual "preclearance" of editor selection from this

not purport to announce a standard that governed sex-based, gender-based, or sexual orientation-based affirmative action.[11] In sum, none of the factual allegations in Plaintiff's complaint suggest *any* illegality on the part of NYU or the Law Review.

Recognizing as much, Plaintiff tacks on a wholly speculative allegation that students on the Law Review will, in the coming selection cycle, "us[e] . . . 'statements of interest' and résumés to give preferential treatment to" racial minorities and other groups, on the unfounded suspicion that the Law Review has "attempt[ed] to obscure the details of its membership-selection process." Compl. ¶¶ 13, 15. But these "naked assertion[s] devoid of further factual enhancement," *Dejesus*, 726 F.3d at 87 (quoting *Iqbal*, 556 U.S. at 678), are textbook examples of conclusory allegations that are *not* assumed true on a motion to dismiss, *see, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556-57; *Rolon*, 517 F.3d at 149; *see also Allen v. Credit Suisse Sec. (USA), LLC*, 895 F.3d 214, 222 (2d Cir. 2018) ("Bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory." (cleaned up)). Plaintiff's lawyers know this all too well: Courts uniformly rejected the prior complaints they filed against law journals (including the Law Review) as much too conclusory. *See FASORP II*, 2020 WL 1529311, at *7 ("FASORP fails to proffer any factual allegation describing the [NYU] Law Review's article-selection process other than alleging that the Law Review receives background information of the authors and

---

Court based on a certification that each year's selection process was purely race-blind, sex-blind, gender identity-blind, and sexual orientation-blind, Compl. ¶ 27—strays far beyond what any statute or constitutional provision requires. Moreover, Plaintiff's serious overreach to demand that students on the Law Review not just comply with *SFFA*, but further "explicitly disavow[] any consideration of race, sex, sexual orientation, or gender identity or expression," *id.*, raises serious compelled speech issues, *see, e.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570, 603 (2023) ("The First Amendment envisions the United States as a rich and complex place where all persons are free to think and speak as they wish, not as the government demands.").

[11] Indeed, the Court in *SFFA* reiterated that "discrimination that violates the Equal Protection Clause . . . also constitutes a violation of Title VI." 600 U.S. at 198 n.2. Applying this logic to Title IX, that statute at most subjects sex-based or gender-based affirmative action to *intermediate* scrutiny, *see, e.g.*, *Craig v. Boren*, 429 U.S. 190 (1976), if not less, *see* 34 C.F.R. § 106.3(b) (authorizing recipients of federal funding to "take affirmative action to overcome the effects of conditions which resulted in limited participation [in an education program or activity] by persons of a particular sex," even "[i]n the absence of a finding of discrimination on the basis of sex").

asserting in a conclusory way that the process is discriminatory, which is fatal to its article selection claim . . . ."); *see also FASORP I*, 2019 WL 3754023, at *9 ("The complete absence of 'factual material' . . . is fatal to the plaintiffs' claim of discriminatory article selection."); *FASORP I* Compl. ¶ 19 ("The Harvard Law Review also discriminates on account of race and sex when selecting articles for publication, by giving preferential treatment to articles written by women or racial minorities."). And ample precedent confirms the point. *See, e.g.*, *Iqbal*, 556 U.S. at 680-81 ("bare assertions" of specific mistreatment occurring "as a matter of policy" and "solely on account of" protected grounds were "conclusory and not entitled to be assumed true"); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("naked allegation that appellees 'selectively enforc[ed] the College rules . . . against plaintiffs . . . because they are black [or] Latin' [was] too conclusory to survive a motion to dismiss"); *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (plaintiffs' "naked allegation" of differential treatment based on religion and national origin "cannot demonstrate a plausible entitlement to Title VI relief"); *Ruderman v. Police Dep't of City of N.Y.*, 857 F. Supp. 326, 330 (S.D.N.Y. 1994) ("As it relies on bald accusations and states no facts in support of a claim of continuing discrimination, [plaintiff's] allegation of continuing discrimination must be dismissed . . . ."); *Bar-Levy v. Mitchell*, No. 22 Civ. 3408, 2022 WL 14746399, at *8 (S.D.N.Y. Oct. 25, 2022) ("specific factual allegations" required to plead a Title VI violation) (collecting cases); *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 521-22 (S.D.N.Y. 2018) (collecting cases).

To the extent Plaintiff believes his forward-looking speculation should be credited because of his assertions that the Law Review used to consider race as one of many aspects of diversity in editor selection in the past and now continues to support diversity writ large, he is mistaken. Plaintiff's factual allegations "do[] not suggest [impropriety]," so his "conclusory allegation" of

future preferential treatment does not change the calculus or otherwise "supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557; *accord, e.g.*, *Ray v. Ray*, 799 F. App'x 29, 31 n.2 (2d Cir. 2020) (plaintiffs do not have "*carte blanche* to make baseless assumptions about otherwise permissible conduct"); *Fillmore E. BS Fin. Subsidiary LLC*, 552 F. App'x at 18 (allegations "describ[ing] only actions that are consistent with lawful conduct" followed by a "conclusory allegation . . . of culpable conduct" are "insufficient to make the claim plausible" (cleaned up)); *Bejjani v. Manhattan Sheraton Corp.*, No. 12 Civ. 6618, 2013 WL 3237845, at *14 (S.D.N.Y. June 27, 2013) (plaintiffs did not state claim by describing "otherwise lawful" conduct "followed by an entirely conclusory accusation of" wrongdoing). Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Indeed, when the Court recently gave Plaintiff an opportunity to identify "any facts to support" his concerns, counsel did not even try to argue that any other allegations in the complaint offered such support; he simply insisted: "That is the fact. That is the fact." Ex. A at 8:1-3. As the Second Circuit and others have warned, such conclusory and unsupported assertions are telltale "danger sign[s] that the plaintiff is engaged in a fishing expedition" rather than stating a cognizable claim for relief. *Pension Benefit Guar. Corp.*, 712 F.3d at 719 (quoting *DM Research, Inc.*, 170 F.3d at 55); *see* Ex. A at 14:25-15:1, 15:13-14, 15:20-22, 17:15-17 (Plaintiff's counsel requesting expedited discovery, which Magistrate Judge Netburn ultimately denied, to "test" whether Plaintiff's own conclusory allegation "[i]s . . . correct" instead of "trying to figure it out as we go along").

If any doubt remained, the logical consequences of Plaintiff's theory would reveal its fatal

weakness. Under his view, "every education program or activity receiving Federal financial assistance that (a) uses personal essays or [résumés] as part of a selection or admission process, and (b) has made a general statement of interest in or commitment to diversity—criteria which likely encompass a vast majority of the nation's universities, colleges, private schools, and other educational institutions—could be subjected to the costly and burdensome prospect of discovery arising from lawsuits brought under Titles VI and/or IX, so long as the complaint is signed by a lawyer pursuant to Rule 11." *FASORP I*, 2019 WL 3754023, at *8 n.16 (cleaned up). Similarly, if Plaintiff's complaint survives this motion, countless educational institutions across the country will be forced into intrusive discovery simply because they previously followed Supreme Court precedent allowing them to consider applicants' racial identities as part of holistic admissions processes. These consequences—especially paired with the unprecedented relief Plaintiff seeks, *see supra* note 10—would improperly chill universities, other educational institutions, and their students from even expressing support for diversity or the many "commendable" goals to which it relates. *SFFA*, 600 U.S. at 214; *see, e.g.*, *Healy v. James*, 408 U.S. 169, 180, 187 (1972) (recognizing the university as "peculiarly the 'marketplace of ideas,'" including ideas that one might find "abhorrent"); *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 232 (2000) (universities "undertake[] to stimulate the whole universe of speech and ideas"). Neither *SFFA* nor any antidiscrimination statute remotely requires this dangerous result.

### B.      Plaintiff Fails to Plead Intentional Discrimination by NYU

Even if Plaintiff's claims could satisfy *Twombly* and *Iqbal*, they would fail because his conclusory allegations do not suggest any knowledge, let alone intent, on the part of NYU. It is well established that Title VI and Title IX prohibit only *intentional* discrimination by a recipient of federal funding. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001); *Doe v. NYU*, 438 F. Supp. 3d 172, 181 (S.D.N.Y. 2020). But Plaintiff does not allege that NYU itself has

adopted any "policies or general practices [that] are discriminatory." *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007). Instead, Plaintiff concedes that the Law Review is "operated by students" who not only "select and edit the articles that the Law Review will publish," but "also select the students who serve as members and editors of the Law Review." Compl. ¶ 5. And he asserts that "New York University is violating Title VI and Title IX by *allowing* the NYU Law Review to use race and sex preferences when selecting its members and editors." *Id.* ¶ 21 (emphasis added). In other words, Plaintiff believes that despite the change in law effected by *SFFA* and the change in policy on the Law Review's website, *students* (not NYU) will surreptitiously employ unlawful preferences. *See id.* ¶ 15.

Plaintiff tellingly does not (and cannot) plead any facts as to NYU's actual knowledge of any secret plans by Law Review leaders to discriminate—nor would NYU have any reason to know of such plans, given the facially neutral language on the Law Review's website. *See id.* ¶ 13. In truth, NYU is committed to following the law, disavows any and all efforts to engage in unlawful discrimination, and will not countenance such discrimination by its students. *See, e.g.*, NYU, *Non-Discrimination and Anti-Harassment Policy and Complaint Procedures for Students* (Aug. 16, 2021), https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/non-discrimination-and-anti-harassment-policy-and-complaint-proc.html (prohibiting "adverse treatment of any student based on actual or perceived race, sex, gender and/or gender identity or expression, . . . sexual orientation," and other specified characteristics "rather than on the basis of the student's individual merit"); Ex. A at 18:18-20 (Magistrate Judge Netburn explaining that, like any other entity, "NYU [is] already . . . under an obligation to comply with the law"). Plaintiff's failure to plead any facts that would suggest intentional discrimination by

NYU dooms his suit.[12]

### C.    Plaintiff Fails to State Claims Under Any Other Statute

Plaintiff's frivolous claims "under . . . 42 U.S.C. § 1983[] and any other law that might supply a cause of action for the requested relief," Compl. ¶ 26, hardly merit discussion. If anything, they simply highlight his refusal to adhere to federal pleading requirements. As for Section 1983, even setting aside the *Twombly/Iqbal* issues discussed above, Plaintiff pleads no facts whatsoever to suggest that NYU or Law Review students ever acted or will act under color of state law, *see, e.g.*, 42 U.S.C. § 1983; *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 111 (2d Cir. 2022); *Yang v. Eastman Sch. of Music*, No. 21-1482, 2022 WL 1040418, at *1 (2d Cir. Apr. 7, 2022). Likewise, Plaintiff's Hail Mary citation to "any other law that might supply a cause of action," Compl. ¶ 26, could hardly be less sufficient. It is black letter law that Plaintiff must specify a cause of action in his complaint, rather than delegating that responsibility to this Court or to NYU. *See, e.g.*, *Cortez v. Stillwell Ready-Mix & Bldg. Materials, L.L.C.*, No. 20 Civ. 7775, 2022 WL 137465, at *2 (S.D.N.Y. Jan. 13, 2022) (holding pleading "woefully inadequate" where party failed to "indicate the purported cause of action for each" claim); *Douek v. Citibank*, No. 20 Civ. 8074, 2021 WL 3604761, at *1 (S.D.N.Y. Aug. 12, 2021) (where "Defendants—and the Court—are left to guess about what [the plaintiff's] claims are," complaint "is plainly insufficient to satisfy Rule 8").

\*      \*      \*

The Court should dismiss the complaint with prejudice. Plaintiff has been on notice of the defects in his conclusory pleading since the moment NYU first appeared in this case, *see* ECF 20

---

[12] There is a standard under which an educational institution's failure to address peer discrimination can constitute discrimination by the institution itself: deliberate indifference. *See, e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (Title IX); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 & n.10 (2d Cir. 2012) (Title VI). But even if that damages-focused standard extends to the context of a suit for purely prospective relief based on a fear of future discrimination, Plaintiff does not remotely plead the elements of a deliberate indifference claim.

at 2-3, if not before. But rather than amending, Plaintiff chose to double down on his half-baked theories, *see* ECF 21 at 2-3, even after Magistrate Judge Netburn expressed clear skepticism and warned Plaintiff that his claims seemed unripe, *see* Ex. A at 12:22-13:16. "Plaintiff's failure to fix the deficiencies contained in his initial complaint, after being provided ample notice of them, is sufficient ground to deny leave to amend." *Akyar v. TD Bank US Hold. Co.*, No. 18 Civ. 379, 2018 WL 4356734, at *6 (S.D.N.Y. Sept. 12, 2018) (Broderick, J.).

Moreover, this is not Plaintiff's counsel's first rodeo. Plaintiff's counsel has previously burdened NYU with costly litigation and appeals over the Law Review's editor selection process, despite counsel's consistent inability to identify a plaintiff with standing or allege facts to support any plausible claim for relief. *See FASORP II*, 2020 WL 1529311, *aff'd*, 11 F.4th 68 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2813 (2022).

Under these circumstances, allowing amendment would be unduly prejudicial to NYU—and futile in any event, given the Law Review's closely scrutinized history of following applicable law in its editor selection processes. *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (describing prejudice to the defendant as "the most important factor" in determining whether to grant leave to amend (quoting Wright & Miller, Federal Practice & Procedure § 1487)). Justice does not require leave to amend; it supports ending this burdensome, yearslong fishing expedition now. *See* Fed. R. Civ. P. 15(a); *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 102 (2d Cir. 2019) (affirming dismissal of complaint with prejudice where complaint "contain[ed] so few factual allegations it [wa]s nothing more than a fishing expedition" (first alteration in original)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant NYU's motion and dismiss the complaint with prejudice.

Dated:  New York, New York
            January 29, 2024

Respectfully submitted,

Roberta A. Kaplan
Gabrielle E. Tenzer
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
ajain@kaplanhecker.com

*Attorneys for Defendant*
*New York University*

24