# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOHN DOE, on behalf of himself and
others similarly situated,

*Plaintiff,*

v.

NEW YORK UNIVERSITY,

*Defendant.*

No. 23 Civ. 10515 (VSB) (SN)

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT NEW YORK UNIVERSITY'S MOTION TO DISMISS THE COMPLAINT

Roberta A. Kaplan
Gabrielle E. Tenzer
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
ajain@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
jmatz@kaplanhecker.com

*Attorneys for Defendant*
*New York University*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 1

   I.    Plaintiff Fails to Establish His Standing ................................................................ 1

   II.   Plaintiff's Challenge Remains Unripe .................................................................... 2

   III.   Plaintiff Fails to State a Plausible Claim for Relief ............................................... 3

        A.    Plaintiff Fails to Plausibly Allege Discrimination ...................................... 3

        B.    Plaintiff Fails to Plead Intentional Discrimination by NYU ...................... 9

        C.    Plaintiff Fails to State Claims Under Any Other Statute ......................... 10

CONCLUSION ................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page(s)**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ................................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ *passim*

*Atkins v. City of Chicago*,
    631 F.3d 823 (7th Cir. 2011) .................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ *passim*

*Burgis v. N.Y.C. Dep't of Sanitation*,
    798 F.3d 63 (2d Cir. 2015) ..................................................................... 5

*Chanel, Inc. v. RealReal, Inc.*,
    449 F. Supp. 3d 422 (S.D.N.Y. 2020) .................................................... 2

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................... 2

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ............................................................................. 10

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014) ............................................................... 1, 4

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ................................................................................. 4

*Fac., Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*,
    No. 18 Civ. 9184, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) ..................................... 5, 6

*Kajoshaj v. New York City Department of Education*,
    543 F. App'x 11 (2d Cir. 2013) ......................................................... 7, 8

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020) ................................................................... 4

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,
    780 F.3d 582 (4th Cir. 2015) ................................................................. 4

*Orozco v. Fresh Direct, LLC*,
    No. 15 Civ. 8226, 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016)........................................ 2

*Ray v. Ray*,
    799 F. App'x 29 (2d Cir. 2020) ........................................................................................ 7

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)............................................................................................. 4

*Santana v. City of New York*,
    No. 15 Civ. 6715, 2018 WL 1633563 (S.D.N.Y. Mar. 29, 2018) .................................... 10

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ........................................................................................ 4

*Students for Fair Admissions v. President and Fellows of Harvard College*,
    600 U.S. 181 (2023)..................................................................................................... 6, 7

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)........................................................................................................ 1

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)..................................................................................................... 1, 4

*Trump v. New York*,
    141 S. Ct. 530 (2020)...................................................................................................... 2

*Worth v. Jackson*,
    451 F.3d 854 (D.C. Cir. 2006) ........................................................................................ 3

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)............................................................................................. 4

*Yamashita v. Scholastic Inc.*,
    936 F.3d 98 (2d Cir. 2019)............................................................................................. 8

**Statutes**

42 U.S.C. § 1981............................................................................................................... 1, 10

42 U.S.C. § 1983............................................................................................................... 1, 10

**Rules**

Fed. R. Civ. P. 8.............................................................................................................. *passim*

Fed. R. Civ. P. 11(b)(2)..................................................................................................... 10

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 4

**Other Authorities**

5 Wright & Miller,
    Federal Practice & Procedure § 1216 (4th ed.)................................................. 1

NYU Law Review, *Mastheads*,
    https://www.nyulawreview.org/masthead/ ...................................................... 2

## PRELIMINARY STATEMENT[1]

Plaintiff's brief makes clear that his complaint ultimately depends on the application of a decades-old, now-superseded view of federal pleading. Indeed, the main case on which he rests his argument is *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). *See* Opp. 2, 4, 6, 13-15, 19. But as every law student knows, "the Supreme Court in 2007 and 2009 rendered two decisions that represent a significant transformation in federal pleading practices." 5 Wright & Miller, Federal Practice & Procedure § 1216 (4th ed.). Those two cases (*Iqbal* and *Twombly*) "repudiated" *Swierkiewicz*'s lax description of Rule 8 of the Federal Rules of Civil Procedure by requiring a complaint to "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff falls far short of that standard. At best, while he alleges that discrimination is theoretically *possible* (since the Law Review may learn the race, gender, or sexual orientation of some applicants), he comes nowhere close to alleging that discrimination is *plausible* (especially given the conclusory nature of his allegation that Law Review leaders have somehow already formed an illegal agreement to discriminate). Yet that is just one of many defects in the complaint, which fails to allege standing, ripeness, intentional discrimination, or any discernible claims under either Section 1983 or Section 1981.

## ARGUMENT

### I.    Plaintiff Fails to Establish His Standing

Plaintiff's filing confirms that he does not face a "substantial risk" of injury—let alone any "certainly impending" harm. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

---

[1] All abbreviations have the meaning given in NYU's opening brief, ECF 43, and citations to "Mot. __" refer to pages of that brief. Citations to "Opp. __" refer to pages of Plaintiff's opposition brief, ECF 48.

Plaintiff cannot escape a fatal flaw in his theory: the Law Review's stated policy for selecting new editors is facially lawful; after Plaintiff filed the complaint, a new set of Law Review editors came into leadership; and it is speculative to allege that these new leaders will secretly depart from the plain text of that facially lawful policy to engage in unlawful intentional discrimination that harms Plaintiff. Plaintiff does not allege any facts concerning statements or conduct by the newly elected student leaders. And he does not allege any prior discriminatory applications of this policy. Instead, he alleges "no more than conjecture." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam).[2]

Plaintiff's attempted evasions lack merit. Nothing about NYU's argument depends on denying his factual allegations, which simply fail to address the presence of entirely new decisionmakers and instead speculate that he will somehow be harmed by the alleged policy they may eventually apply. *Contra* Opp. 5-6. Nor does NYU's argument rely on impermissible materials for the proposition that the Law Review has new student leaders. *Contra id.* at 6-7. Even at the pleading stage, this Court may draw on its "judicial experience and common sense" in assessing allegations of injury, *Iqbal*, 556 U.S. at 679, and annual turnover is a fact of life for any student-run publication, Compl. ¶ 5. To the extent there is any doubt, it is dispelled by the Law Review website, which is incorporated into (and integral to) the complaint. *Id.* ¶¶ 8-15.[3]

## II.     Plaintiff's Challenge Remains Unripe

Plaintiff's claim is also unripe because the Law Review's facially lawful policy has not been applied in any concrete setting impacting Plaintiff. In fact, both the stated policy itself, as

---

[2] Plaintiff contends that the injury he alleges is "imminent" because it will occur in a few months. Opp. 7-8. That misses the point. The Article III "imminence" requirement focuses not only on whether the injury will occur soon, but whether it is certain or substantially likely to occur at all. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

[3] *See* NYU Law Review, *Mastheads*, https://www.nyulawreview.org/masthead/ (last visited Feb. 29, 2024); *see also Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 422, 429 n.1 (S.D.N.Y. 2020) (Broderick, J.); *Orozco v. Fresh Direct, LLC*, No. 15 Civ. 8226, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016).

well as the alleged secret discriminatory plan to depart from it, could obviously be changed before *any* policy is actually applied to Plaintiff later this year. *See Worth v. Jackson*, 451 F.3d 854, 861-62 (D.C. Cir. 2006) (challenge to alleged unwritten affirmative action policy unripe where no such policy was yet "formalized" and applied); Mot. 12-14. Unable to rebut this point, Plaintiff urges the Court to ignore it. Opp. 11. But his allegations do not support a plausible inference that the Law Review and its new leaders have settled on any final (let alone definitive and unlawful) policy.

### III.    Plaintiff Fails to State a Plausible Claim for Relief

In addition to these jurisdictional defects, the complaint should be dismissed because it fails to state a claim for relief.

#### A.    Plaintiff Fails to Plausibly Allege Discrimination

Put simply, Plaintiff's case falls apart if he cannot adequately allege that the Law Review discriminates in spite of its own facially lawful policy. Yet Plaintiff does not allege even a single discriminatory statement or act by any Law Review editor. Recognizing as much, Plaintiff attempts to set the pleading bar as low as possible, arguing that Rule 8 creates an "extremely permissive" standard and requires only "fair notice of his claim." *Id.* at 12-13 (citations omitted). But the Supreme Court has long since clarified that Rule 8 requires far more from civil litigants than that. *See Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544. Plaintiff's claims instead must cross the line from *possible* to *plausible*. And the complaint here fails that test. Holding otherwise would flout settled Supreme Court and Second Circuit precedent, eviscerate Rule 8's familiar standard, and invite a flood of burdensome lawsuits (with equally threadbare allegations) against educational institutions making perfectly lawful statements concerning their commitment to diversity.

***Plaintiff Misstates the Law.*** In many ways, Plaintiff gives the game away through his choice of citations. His brief is littered with authorities that predate *Twombly* and *Iqbal*—and that are plainly irreconcilable with the pleading standard announced in those cases. This is particularly

true of the main precedent he invokes: *Swierkiewicz*. *See* Opp. 2, 4, 6, 13-15, 19. As the Second Circuit held a decade ago, the pleading standard underlying *Swierkiewicz* "was abandoned by the . . . later rulings in *Twombly* and *Iqbal*." *E.E.O.C.*, 768 F.3d at 253.[4] Accordingly, "mere notice pleading—the pleading standard underlying *Swierkiewicz*'s analysis—[is now] inadequate." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020). Under the law that governs today, while a complaint need not be hyper-specific, it must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (holding that allegations of discrimination cannot survive Rules 8 and 12(b)(6) unless bolstered by "further factual enhancement" (quoting *Twombly*, 550 U.S. at 557)); *contra* Opp. 5-6, 15.

Plaintiff's outdated view of the law ignores another crucial and related principle: to satisfy Rule 8, allegations must cross the line from *possible* to *plausible*. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

This principle drove the outcome in *Twombly* itself. The plaintiffs in that case alleged a conspiracy in violation of the antitrust laws, but their allegations of parallel conduct failed to support a plausible inference that such conduct arose from an unlawful agreement, as opposed to innocent commercial activity. *See* 550 U.S. at 557 (concluding that claims of parallel conduct

---

[4] While *Swierkiewicz* remains valid for the proposition that discrimination complaints are not subject to a heightened pleading standard, the general application of Rule 8 is "now guided by the Court's more recent holdings" in *Twombly* and *Iqbal*. *E.E.O.C.*, 768 F.3d at 254; *accord McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 587 (4th Cir. 2015) ("*Swierkiewicz* . . . applied a more lenient pleading standard than [that] now required by *Twombly* and *Iqbal*."); *Starr v. Baca*, 652 F.3d 1202, 1215 (9th Cir. 2011) ("[T]he Court applied a higher pleading standard in . . . *Twombly* and *Iqbal*" than in *Swierkiewicz* and *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam)). Plaintiff's other key authorities, including *Wynder v. McMahon*, 360 F.3d 73, 77, 79 (2d Cir. 2004) (Opp. 13, 19, 22), and *Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007) (Opp. 19), are equally frail in light of *Iqbal* and *Twombly*.

required "some setting suggesting" an unlawful agreement and could not survive without "a more specific allegation" or "a basis for inferring a tacit agreement" (citations omitted)). Following *Twombly* and *Iqbal*, courts engage in a "context-specific" analysis—using "judicial experience and common sense"—to determine whether allegations merely indicate that illegal acts are *possible*, or whether they instead support a *plausible* inference of illegal conduct. *Iqbal*, 556 U.S. at 679.

**Plaintiff's Allegations Are Deficient.** Under a correct statement of the law, rather than Plaintiff's pre-*Iqbal*/*Twombly* version, Plaintiff's allegations cannot survive. At bottom, Plaintiff alleges facts that are perfectly consistent with lawful conduct—and he does not allege *any* facts supporting a plausible inference of a surreptitious scheme or agreement to discriminate.

For example, Plaintiff asserts that he adequately pleaded discrimination by alleging that the Law Review gives "preferential treatment" to certain groups "when selecting its members." Compl. ¶ 15; Opp. 14. As Plaintiff tacitly admits, however, that allegation would rank as conclusory unless it were rendered plausible by further "factual detail." Opp. 15; *see* Mot. 17-18. In his own words, it is not enough to allege, "the Law Review discriminated." Opp. 15.

Plaintiff attempts to solve this dilemma by alleging that the Law Review will discriminate using "'statements of interest' and résumés." Compl. ¶ 15; Opp. 15. He believes that by specifying how the Law Review may come to possess information about the race, gender, or sexuality of some applicants, he has met his duty to plausibly allege that the Law Review is engaging in discrimination. But that is mistaken. Allegations that discrimination may sometimes be *possible* are not the same as allegations that discrimination is *plausible* under Rule 8. *See, e.g.*, *Iqbal*, 556 U.S. at 678; *accord Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015); *Fac., Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*, No. 18 Civ. 9184, 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020) ("*FASORP II*"). Otherwise, countless entities—not only

universities, but employers throughout many other sectors of the economy—could be subject to suit under Title VI, Title IX, or even Title VII simply because they, too, might become aware of certain applicants' protected characteristics during their hiring or selection processes.

That is particularly true given the nature of Plaintiff's claim. As Plaintiff concedes in the complaint, the Law Review's stated policy for selecting editors is lawful. *See* Compl. ¶¶ 13-14. Accordingly, Plaintiff's theory of the case is that the Law Review student leadership is engaging in discrimination by entering into a secret, illegal agreement to discriminate. But just like in *Twombly*, this complaint fails to allege "a basis for inferring a tacit agreement" or "some setting suggesting" the existence of such a covert agreement to break the law. 550 U.S. at 557.

In a final effort to surmount the plausibility barrier, Plaintiff points to three other allegations, none of which works. *First*, he alleges that the Law Review previously considered race, gender, and sexual orientation in selecting editors—and makes the bizarre claim that this was illegal at the time, since (in his view) the law did not change in *Students for Fair Admissions v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"). Opp. 16, 18. Of course, Supreme Court precedent held otherwise, and the Law Review's old policy was proper under those cases. *See* Mot. 15-16; *FASORP II*, 2020 WL 1529311, at *7. The Law Review's prior adherence to past precedent undermines (not strengthens) any inference that it is violating the law now.

*Second*, Plaintiff notes that the Law Review website announces a commitment to "staff diversity." Opp. 16. But a generalized commitment to "diversity" hardly makes plausible an inference that diversity is being achieved through *illegal* means. Indeed, *SFFA* itself disavows any suggestion that diversity is an unworthy or nefarious goal, and expressly permits consideration of life experiences (including those affected by race). 600 U.S. at 230. In that respect, too, the Law Review's conduct reflects, rather than offends, Supreme Court precedent. To treat such post-*SFFA*

6

behavior as plausibly indicating unlawful discrimination would eviscerate Rule 8.

*Finally*, Plaintiff points to his allegation that the Law Review changed its website after *SFFA*, removing references to what he alleges was a "diversity set-aside" while indicating that grades are "the least important factor in evaluating applicants." Opp. 16-17; Compl. ¶ 13. But here, too, Plaintiff's own complaint undermines his position: in *SFFA*, the Court forbade using race as a "plus" factor, and the Law Review is alleged to have responded by eliminating its pre-*SFFA* selection process that did so. *See* Compl. ¶ 13. Even affording Plaintiff all reasonable inferences, nothing about this response to *SFFA* plausibly indicates that Law Review leaders have secretly agreed to discriminate despite their own stated policies and binding Supreme Court precedent.[5]

For those reasons alone, the complaint should be dismissed. But there is more: Plaintiff's arguments are flatly inconsistent with Second Circuit authority, *see* Mot. 18-19, which Plaintiff unsuccessfully attempts to distinguish, *see* Opp. 15 n.5. Consider, for example, *Kajoshaj v. New York City Department of Education*, 543 F. App'x 11 (2d Cir. 2013), in which the Second Circuit affirmed the dismissal of a complaint alleging discrimination under Title VI. There, the plaintiffs alleged that school officials undertook several baseless adverse actions against a Muslim parent and his children, and further alleged (upon information and belief) that the officials treated non-Muslim students more favorably. *Id.* at 14. The Second Circuit held that "[e]ven if these allegations might be 'consistent' with a Title VI violation, they 'stop[] short of the line between possibility and plausibility of entitlement to relief,'" because the "complaint [was] devoid of factual allegations that would reasonably give rise to . . . an inference" of discrimination. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Plaintiff seeks to distinguish *Kajoshaj* on the ground that the plaintiffs in

---

[5] Plaintiff objects that he has not yet undertaken discovery. But even where the "necessary facts are peculiarly within the possession and control of the defendant," a plaintiff does not enjoy "*carte blanche* to make baseless assumptions about otherwise permissible conduct." *Ray v. Ray*, 799 F. App'x 29, 31 n.2 (2d Cir. 2020) (cleaned up).

that case failed to "assert that any defendant referenced their religion or national origin." 543 F. App'x at 14; Opp. 15 n.5. But the same is true here: the Law Review's stated policy is facially neutral, with no reference to any protected group. In fact, an inference of discrimination here would be even *more* implausible than in *Kajoshaj*, since Plaintiff does not cite *any* statements or conduct by any Law Review editor bearing on the selection process. In *Kajoshaj*, by contrast, the plaintiffs at least pointed to a pattern of irregular behavior by school officials, such as meritless reports of child abuse and disbelief of medical information provided by multiple Muslim doctors, even though that was not enough to save their complaint. *See* 543 F. App'x at 14.

In the end, while Plaintiff contends that the Law Review conceivably could discriminate, since it may learn the race, gender, and sexual orientation of some applicants, precedent requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Here, because Plaintiff offers nothing more than such a "sheer possibility," he fails to satisfy Rule 8.

***Plaintiff's Position Would Cause Broader Harm.*** As we explained in our motion— without any serious objection—treating Plaintiff's allegations as sufficient to access discovery would subject innumerable educational institutions to substantial and costly burdens. Mot. 19-20 (describing this concern); Opp. 20 (failing to deny it). If a school's prior lawful consideration of race, coupled with a current welcoming of diversity, would suffice to support a plausible inference of intentional discrimination, then Rule 8 is a dead letter in this context. Neither law nor logic supports that result, which would open the floodgates to "fishing expedition[s]" and transform federal courts "into an audit bureau" for selection policies at educational institutions nationwide. *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 106-07 (2d Cir. 2019); *accord Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.).[6]

---

[6] Plaintiff's theory also poses other threats. If his inference were found plausible here, it would be equally plausible

### B.      Plaintiff Fails to Plead Intentional Discrimination by NYU

Plaintiff's complaint must also be dismissed on the independent ground that it fails to allege any intentional discrimination by NYU itself. *See* Mot. 20-22. Plaintiff's responses on this point are exceedingly unpersuasive. He first cites an allegation that NYU "allow[s]" its Law Review to discriminate, which is merely a textbook example of conclusory pleading. Opp. 20. He then notes "the close relationship between NYU and the Law Review" and NYU's awareness of the Law Review's stated selection policy, neither of which plausibly suggests that NYU would have knowledge of a secret plan by students on the Law Review to apply that facially neutral policy in a discriminatory manner. *Id.* at 20-21. Indeed, Plaintiff does not allege a single statement, communication, meeting, action, wink, or nod plausibly suggesting that NYU is somehow party to an illegal agreement covertly formed by Law Review student editors. *Twombly*, 550 U.S. at 557.

But it only goes downhill from there. Plaintiff seeks to leverage a failed, previous lawsuit filed by his own counsel as somehow providing a basis for inferring NYU's current knowledge. Opp. 20-21 & n.8. He then doubles down, claiming that *this* lawsuit somehow gave NYU "actual knowledge" of discrimination. *Id.* at 21. Of course, that makes no sense—at most, this suit placed NYU on post-filing notice of Plaintiff's unfocused suspicion of possible future discrimination. Finally, while all but admitting that his view is foreclosed by *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001), Plaintiff denies that he has to allege intentional discrimination to be entitled to prospective relief, supporting his assertion with only pre-*Sandoval* dicta, plus a concurrence, a dissent, and an out-of-circuit case. Opp. 21-22 & nn. 9-10. Plaintiff cites no case, from any court, actually applying Title VI or IX in this manner, and offers no good reason to break new ground.

---

to infer, for example, that a medical facility rendering abortion care pre-*Dobbs* would secretly violate a state abortion ban post-*Dobbs* if it maintained a commitment to ensuring health for all its patients. Plaintiff's theory is thus an open invitation for litigious parties to bring vexatious lawsuits whenever the Supreme Court overrules precedent and institutions attempt in good faith to comply. It is telling that Plaintiff makes no serious effort to prove otherwise.

### C.      Plaintiff Fails to State Claims Under Any Other Statute

This leaves only Plaintiff's insistence that he need not specify any particular cause of action. Opp. 22-23. In making that assertion, Plaintiff musters no defense of his frivolous Section 1983 claim, which can therefore be dismissed. *Compare id.* at 22, *with* Fed. R. Civ. P. 11(b)(2). Instead, he proposes a new claim under 42 U.S.C. § 1981. Opp. 23. This effort is particularly audacious given that Plaintiff's counsel *twice* attempted the same bait-and-switch five years ago, rendering inexplicable his failure to include a Section 1981 claim in the complaint.[7] In any event, even a *pro se* plaintiff (let alone someone represented by sophisticated counsel) "cannot amend his [c]omplaint to add additional causes of action[] in his opposition papers." *Santana v. City of New York*, No. 15 Civ. 6715, 2018 WL 1633563, at *4 (S.D.N.Y. Mar. 29, 2018) (collecting cases). Plaintiff's Section 1981 claim fails for that reason alone. It also fails for all the reasons set forth above—and, separately, because one passing reference to "membership offers," Compl. ¶ 9; Opp. 23, clearly does not suffice to plausibly plead "an impaired 'contractual relationship,' § 1981(b), under which [Plaintiff] has rights," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

---

[7] *See* Pls.' Resp. to Mot. to Dismiss at 7-8, *Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, No. 18 Civ. 12105 (D. Mass. Mar. 28, 2019), ECF 51 ("amended complaint's omission" of a Section 1981 claim "should not be fatal under a regime of notice pleading"); Pls.' Resp. to NYU Defs.' Mot. to Dismiss at 14-15, *Fac., Alumni, & Students Opposed to Racial Preferences v. NYU L. Rev.*, No. 18 Civ. 9184 (S.D.N.Y. Apr. 10, 2019), ECF 48 (same).

## <u>CONCLUSION</u>

The Court should grant NYU's motion and dismiss the complaint with prejudice. Granting leave for Plaintiff to amend would be unjust and futile. *See* Mot. 22-23. This is particularly true since Plaintiff does not identify a single fact he could allege that would change the analysis. Opp. 23-25.

Dated: New York, New York
          March 1, 2024

Respectfully submitted,

Roberta A. Kaplan
Gabrielle E. Tenzer
Amit Jain
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
ajain@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
jmatz@kaplanhecker.com

*Attorneys for Defendant*
*New York University*