```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOHN DOE, on behalf of himself and others                   :
similarly situated,                                         :
                                                            :
                                                            :
                              Plaintiff,                    :    23-CV-10515 (VSB)
                                                            :
               - against -                                  :    OPINION & ORDER
                                                            :
NEW YORK UNIVERSITY,                                        :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

Appearances:

Jonathan F. Mitchell
Mitchell Law PLLC
Austin, TX

Ronald A. Berutti
Murray-Nolan Berutti LLC
Clark, NJ

Christopher Ernest Mills
Spero Law LLC
Charleston, SC
*Counsel for Plaintiff*

Joshua Adam Matz
Raymond P. Tolentino
Kaplan Hecker & Fink LLP
Washington, DC

Roberta Ann Kaplan
Gabrielle Tenzer
Amit Jain
Kaplan Hecker & Fink LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiff John Doe brings this putative class-action lawsuit against Defendant New York University ("NYU"), alleging that the membership-selection process for the NYU Law Review ("Law Review") violates Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), and 42 U.S.C. § 1983 ("Section 1983"), by giving preferential treatment to women, non-Asian, homosexual, and transgender students.[1]  Before me is NYU's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Because I lack subject-matter jurisdiction and, in any event, the complaint fails to state a claim, the motion to dismiss is GRANTED.  Accordingly, Doe's complaint is DISMISSED without prejudice.

I.  **Background**[2]

   A.  *Factual Background*

The Law Review is a student-run academic journal that publishes legal scholarship. (Compl. ¶ 5.)  The students who run the Law Review—commonly referred to as editors—select the articles that the Law Review publishes and the students who are invited to join its ranks. (*Id.*)  Before the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College ("SFFA")*, 600 U.S. 181 (2023), the Law Review would select fifty

---

[1] Although Doe purports to assert a claim under "any other law that might supply a cause of action for the requested relief," (Doc. 1 ("Complaint" or "Compl.") ¶ 26), this catch-all language is plainly inadequate to state a claim under Rule 8 in a counseled case, *see Cortez v. Stillwell Ready-Mix & Bldg. Materials, L.L.C.*, No. 20-CV-7775, 2022 WL 137465, at *2 (S.D.N.Y. Jan. 13, 2022) (concluding that pleading was "woefully inadequate" where it failed to "indicate the purported cause of action").  Therefore, this Opinion & Order addresses only those claims explicitly listed in the Complaint.  (Compl. ¶ 26.)

[2] The facts in this section are based upon the factual allegations set forth in the Complaint and the documents about "which plaintiffs had knowledge and relied on in bringing suit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).  I assume the well-pleaded allegations in the Complaint to be true in considering the motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  *See USAA Cas. Ins. v. Permanent Mission of Republic of Namib.*, 681 F.3d 103, 105 n.4 (2d Cir. 2012).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such finding.

new editors each year from the rising second-year class. (Compl. ¶ 9.) Of the fifty students, fifteen were selected based on their performance on a writing competition, fifteen were selected based on their first-year grades, and eight were selected based on a combination of their writing-competition scores and first-year grades. (*Id.*) The remaining twelve spots were filled by the Law Review's Diversity Committee ("Diversity Committee"). (*Id.* ¶ 10.)

To select students to fill these twelve spots, the Law Review required applicants to draft personal statements and permitted them to submit anonymized résumés. (*Id.* ¶¶ 11–12.) In evaluating personal statements, the Diversity Committee considered factors that included (but were not limited to) the applicant's "race, ethnicity, gender, sexual orientation, national origin, religion, socio-economic background, ideological viewpoint, disability, and age." (*Id.* ¶ 11.) The résumés, meanwhile, were intended to provide the Diversity Committee with "personal and professional information that cannot be easily communicated through a personal statement." (*Id.* ¶ 12.)

In the wake of the Supreme Court's decision in *SFFA*, "the Law Review changed its website in an attempt to obscure the details of its membership-selection process." (*Id.* ¶ 13.) The Law Review's website, for example, "no longer mentions the diversity set-aside" or "the role that grades will play in the selection of law-review members."[3] (*Id.*) It also no longer mentions the Diversity Committee. (Compl., Ex. 1.) Despite these changes, the Law Review continues to emphasize the important role that diversity plays in the selection of its members. (*Id.* ¶ 14.) To that end, the Law Review requires each applicant to submit a statement of interest that provides "a more comprehensive view of [him or her] as an individual." (Compl., Ex. 1 at

---

[3] With respect to grades, the Law Review's website now states: "All interested students are strongly encouraged to apply regardless of GPA; there are no cutoffs, and grades are the least important factor in evaluating applicants." (Compl., Ex. 1 at 2.)

3

2.) Students also have the option of submitting a résumé, which the Law Review uses to "realize its commitment to staff diversity." (*Id.*) The Law Review "is using these statements of interest and résumés to give preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people when selecting its members." (Compl. ¶ 15 (internal quotation marks omitted).) "And the Law Review intends to continue these unlawful and discriminatory practices until it is enjoined from doing so." (*Id.*)

### B. *Facts Related to Standing*

Doe is a first-year law student at New York University Law School. (*Id.* ¶ 16.) He describes himself as a heterosexual white man, "consistent with his biologically assigned sex." (*Id.* ¶ 18.) Like many first-year law students, Doe aspires to join his school's law review.[4] (*Id.* ¶ 17.) He plans on applying for Law Review in the summer of 2024. (*Id.*) Doe claims, however, that as a heterosexual white man, he "will be subject to race and sex discrimination" and "denied an equal opportunity to compete for membership." (*Id.* ¶ 19.)

## II. Procedural History

On December 1, 2023, Plaintiff filed a complaint using the pseudonym John Doe.[5] Shortly after filing suit, Doe filed a motion to expedite discovery. (Doc. 10.) I subsequently referred this case (and the discovery motion) to Magistrate Judge Sarah Netburn for general pretrial management. (Doc. 11.) On December 7, 2023, Judge Netburn denied the motion without prejudice, providing Doe leave to renew his request after counsel for NYU filed a notice

---

[4] In the fall of 2023, there were 430 full-time first-year law students enrolled in NYU Law School. *See* Entering Class Profile and Statistics, NYU | Law, https://www.law nyu.edu/jdadmissions/applicants/classprofile (last visited May 29, 2024). Of these 430 students, 55 will be invited to join the Law Review. (Compl., Ex. 1 at 2.)

[5] Prior to filing this lawsuit, Doe filed a miscellaneous action in which Judge Victor Marrero, sitting as the Part I judge, granted his unopposed motion to proceed under a pseudonym. *See Doe v. N.Y. Univ.*, No. 23-MC-398 (S.D.N.Y. Nov. 21, 2023), Doc. 7. Because NYU has not asked me to address the legal basis for Plaintiff to proceed under a pseudonym, this Opinion & Order does not reach that issue.

of appearance. (Doc. 13.) Two weeks later, counsel for NYU appeared. (Docs. 15–18.) The next day, Doe filed a renewed motion to expedite discovery. (Doc. 25.) NYU opposed the motion. (Doc. 28.) On January 10, 2024, Judge Netburn held a hearing with the parties, at which she denied the motion without prejudice to refiling after the "Law Review has issued its operative criteria for selection to the Law Review." (Doc. 32.)

On January 24, 2024, Doe filed a motion to certify the class under Rule 23 of the Federal Rules of Civil Procedure. (Doc. 36.) Five days later, NYU moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. 42.) On NYU's request, Judge Netburn adjourned briefing on Doe's motion to certify the class pending my decision on the motion to dismiss. (Docs. 45, 47.) Doe filed its opposition to NYU's motion to dismiss on February 20, 2024. (Doc. 48.) On March 1, 2024, NYU filed a reply in support of its motion to dismiss. (Doc. 50.)

### III. Legal Standards

#### A. *Federal Rule of Civil Procedure 12(b)(1)*

A district court properly dismisses an action under Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate it." *Garcia v. Lasalle Bank NA.*, No. 16-CV-3485, 2017 WL 253070, at *3 (S.D.N.Y. Jan. 19, 2017) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015)). "The plaintiff bears the burden of proving subject[-]matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and

obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and alterations omitted); *Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11-CV-1169, 2012 WL 1438347, at *2 (S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely on affidavits and other evidence outside the pleadings."), *report and recommendation adopted*, No. 11-CV-1169, 2012 WL 1438263 (S.D.N.Y. Apr. 25, 2012).

### B. *Federal Rules of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## IV. Discussion

### A. *Lack of Subject Matter Jurisdiction*

#### 1. Applicable Law

Article III of the Constitution limits federal-court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The case-or-controversy requirement is enforced through several justiciability doctrines. Among them are the doctrines of ripeness and standing, which are "intended to ensure that the federal courts do not exceed their Constitutional grant of authority." *Benjamin v. Town of Islip*, No. 20-CV-56, 2021 WL 8344132, at *2 (E.D.N.Y. Aug. 12, 2021), *report and recommendation adopted*, No. 20-CV-56, 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022).

To establish standing under Article III, (1) "the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

Constitutional ripeness is best thought of as a "specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). "To say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Mtume v. Sony Music Ent.*, No. 18-CV-11747, 2020 WL 832814, at *4 (S.D.N.Y. Feb. 20, 2020) (quoting *Nat'l Org. for Marriage*, 714 F.3d at 688). For that reason, where, as here, the first of standing's three elements is at issue, courts often address standing and constitutional ripeness challenges

7

together. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014); *Nat'l Org. for Marriage*, 714 F.3d at 689 n.6; *N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 526 (E.D.N.Y. 2013), *aff'd*, 548 F. App'x 741 (2d Cir. 2014). I will use that approach here.

### 2. Application

At this time, Doe's case "is riddled with contingencies and speculation that impede judicial review." *Trump v. New York*, 592 U.S. 125, 131 (2020). As an initial matter, the alleged discrimination has not yet occurred and will occur only if (1) Doe applies to the Law Review; (2) students (or, more specifically, women, non-Asian, homosexual, or transgender students) submit statements of interest or résumés that identify their sex, gender, race, or sexuality; (3) the Law Review editors unlawfully select students based on sex, gender, race, or sexuality; and (4) Doe fails to gain admission to the Law Review. Although Doe intends to apply for Law Review, (Compl. ¶ 17), considerable speculation undergirds Doe's belief that students will share their sex, race, gender identity, or sexual orientation in their applications, and that the Law Review editors will select students based on those characteristics. Doe has not alleged, for instance, that the editors overseeing the selection process have drafted the prompts for the statement of interest, or that the prompts will provoke students to discuss these specific characteristics.[6] (*Id.*, Ex. 1 at 2.) Nor has Doe alleged how the Law Review will collect such information from anonymized résumés, especially since that component of the application is entirely optional. (*Id.*) Even if I were to indulge Doe's belief that some students will reveal this information in their application, it is a speculative leap to conclude that the Law Review is

---

[6] On this score, I find it relevant that the Law Review's selection policy no longer references any specific form of diversity; it explains that the statement of interest offers students "an opportunity . . . to provide the Selection Committee a more comprehensive view of who [they] are as . . . individual[s]" and that the "résumés will be used by the Law Review to realize its commitment to staff diversity." (Compl., Ex. 1 at 2.)

flouting its own facially neutral policy for selecting new editors and instead impermissibly relying on the sex, gender, race, or sexuality of applicants. (*Id.* ¶ 15.) Any prediction regarding what information students may share with the Law Review or how that information may be used is therefore "no more than conjecture" at this time. *See Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).

In maintaining that his allegations of harm are "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013), Doe points principally to two allegations in his Complaint: that the Law Review (1) "is using . . . statements of interest and résumés to give preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people when selecting its members"; and (2) "intends to continue these unlawful and discriminatory practices until it is enjoined from doing so." (Compl. ¶ 15 (internal quotation marks omitted).) These allegations are speculative, devoid of any factual support, and therefore fail to support Doe's argument. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (disregarding "assertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint"). The Complaint does not plead, in other than a conclusory way, how the Law Review is discriminating now or will discriminate in the future. Doe does not assert, for instance, the nature of the "preferential treatment" the Law Review is giving to women, non-Asian racial minorities, homosexuals, and transgender students. Nor does he allege which editors agreed to disregard the Law Review's announced policy. He also fails to provide any examples of discriminatory acts or statements by the Law Review or its editors. Similarly, Doe never explains the basis for his belief that the facially lawful selection policy is masking an otherwise unlawful selection process. Such an utter lack of specificity is insufficient to confer Doe with

9

standing to bring this suit. *See Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.").

To be sure, Doe has alleged how the Law Review may come to learn information about the sex, race, gender identity, or sexual orientation of applicants during the editor-selection process. Indeed, the Law Review invites students to submit statements of interest and résumés, (Compl., Ex. 1 at 2), either one of which can be used to highlight one's personal characteristics. However, the fact that the Law Review may ultimately learn an applicant's sex, race, gender identity, or sexual orientation does not suggest that it will turn around and use that information unlawfully. Doe's claim of discrimination is based on nothing more than an assertion that such unlawful conduct is occurring, without explaining how he knows that to be true or alleging instances of past discrimination. Because something more than a bald assertion is required, *see Allen v. Credit Suisse Sec. (USA), LLC*, 895 F.3d 214, 222 (2d Cir. 2018) ("Bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory." (internal quotation marks, alterations, and citations omitted)), this purported injury cannot confer Doe with standing.

To ameliorate the deficiencies that infect his Complaint, Doe attempts to reframe the nature of his injury as the "deni[al] [of] an equal opportunity to compete for membership on the Law Review." (Compl. ¶ 19.) However, considering the lack of any well-pleaded allegations of a discriminatory selection process, this purported injury likewise rests on nothing more than speculation and conjecture. Moreover, the case on which Doe relies in support of this theory of standing—*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993)—is inapposite. (*Id.*) In *Jacksonville*, the Supreme Court

recognized that "in the context of a challenge to a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." 508 U.S. at 666. To establish such an injury, however, there must be a "government-erected barrier," not one established by a private party. *See Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994) (applying *Jacksonville* and recognizing that the existence of a "government-erected barrier" is a necessary element for standing); *Roberts v. Bassett*, No. 22-622-CV, 2022 WL 16936210, at *2 (2d Cir. Nov. 15, 2022) (same); *Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ. L. Rev. ("FASORP II")*, No. 18-CV-9184, 2020 WL 1529311, at *6 (S.D.N.Y. Mar. 31, 2020) (same), *aff'd*, 11 F.4th 68 (2d Cir. 2021). Because the allegedly discriminatory policies here were implemented by the Law Review, which is plainly not a governmental entity, Doe's reliance on *Jacksonville* is misplaced and cannot provide him with a basis for standing to maintain this case.

### B. *Failure to State a Claim*

#### 1. Title VI and IX

Even assuming Doe had standing to bring this suit and his claims were ripe, I would still dismiss the Complaint for failure to state a claim under Title VI and IX. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."); 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."). "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964, and passed Title IX with the explicit understanding that it would be

interpreted as Title VI was." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009) (citation omitted).

As an initial matter, Doe's allegations that the Law Review's membership-selection process is inconsistent with Titles VI and IX are conclusory and undermined by the plain text of the facially neutral policy. Although Doe alleges that the Law Review "is using . . . statements of interest and résumés to give preferential treatment to [select minority groups]" and "intends to continue" doing so, (Compl. ¶ 15), he offers no factual allegations in support of that assertion, *see Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) ("[N]aked allegation that [the plaintiffs] were treated differently from non-Muslim, non-Albanians cannot demonstrate a plausible entitlement to Title VI relief." (internal quotation marks omitted)); *Manolov v. Borough of Manhattan Comm. Coll.*, 952 F. Supp. 2d 522, 532–33 (S.D.N.Y. 2013) (dismissing Title VI and IX claims where complaint alleged that professors "intentionally treated all white males . . . in an adverse manner" but failed to allege "any facts suggesting that he or other white males were treated differently than other students" (internal quotation marks and emphasis omitted)). It was incumbent upon Doe to include facts supporting his allegation that NYU is giving and intends to give preferential treatment to certain minority groups. *See FASORP II*, 2020 WL 1529311, at *7 ("FASORP fails to proffer any factual allegation describing the [NYU] Law Review's article-selection process other than alleging that the Law Review receives background information of the authors and asserting in a conclusory way that the process is discriminatory, which is fatal to its article selection claim."); *Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, No. 18-CV-12105, 2019 WL 3754023, at *9 (D. Mass. Aug. 8, 2019) ("The complete absence of 'factual material' . . . is fatal to the plaintiffs' claim of discriminatory article selection.").

Although the Law Review considered sex, race, gender identity, or sexual orientation before the Supreme Court's decision in *SFFA*, nothing about this practice was unlawful. *See, e.g., Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 381 (2016) (holding that universities "may institute a race-conscious admissions program as a means of obtaining the educational benefits that flow from student body diversity" on campus (internal quotation marks omitted)); *Grutter v. Bollinger*, 539 U.S. 306, 338 (2003) (holding that law school could consider "a personal statement, letters of recommendation, and an essay describing the ways in which the applicant will contribute to the life and diversity of the Law School"). Indeed, in *FASORP II*, Judge Edgardo Ramos came to the same conclusion.[7]  *See FASORP II*, 2020 WL 1529311, at *7 (concluding that the plaintiff failed to plausibly allege that the Law Review's "facially holistic [membership-selection] process . . . [is an] unlawful quota or set-aside program"). Accordingly, the Law Review's lawful practices of the past do not and cannot give rise to a plausible inference of discrimination today. *See Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (requiring enough facts to support a "minimal plausible inference"); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) ("We need not accept as true . . . an unwarranted factual inference." (internal quotation marks omitted)).

The Law Review's ongoing commitment to diversity does not alter my conclusion.  As an initial matter, the revised selection policy does not identify a particular type of applicant diversity. (*See* Compl., Ex. 1 at 2 (describing the statement of interest as "an opportunity for applicants to provide the Selection Committee a more comprehensive view of who [they] are as an individual"); *id.* (explaining that the résumé can be "used to share personal and professional

---

[7] Although Doe asserts that this practice was unlawful, (Doc. 48 at 18), he does not cite any cases to support this proposition, and, as noted above, such practices were lawful under then-existing Supreme Court precedent.

information that cannot be easily communicated through a personal statement").) Among the many aspects of diversity, several do not relate to any legally protected classification, such as life experience, political ideology, academic interests, and socioeconomic background. Considering the lack of any language in the selection policy demonstrating a preference for students of a protected class and the absence of any allegations supporting the inference that the selection policy would result in preferential treatment of such students, I cannot conclude that the Law Review's continued commitment to diversity gives rise to a plausible inference of unlawful conduct.

Finally, the Complaint does not plausibly allege any intentional discrimination by NYU. *See Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (Title VI); *Doe v. N.Y. Univ.*, 438 F. Supp. 3d 172, 181 (S.D.N.Y. 2020) (Title IX). To the contrary, the Complaint alleges that the Law Review is "operated by students" who both "select and edit the articles that the Law Review will publish" and "the students who serve as members and editors of the Law Review." (Compl. ¶ 5.) Doe does not allege that NYU plays any role in the day-to-day operations of the Law Review or the selection of its new members, let alone its actual knowledge of any covert plans by unidentified editors to give preferential treatment to select students in violation of federal law. Although Doe alleges that NYU is "allowing" the Law Review to discriminate, (*id.* ¶ 21), the Complaint lacks any allegations explaining how it is doing so. Accordingly, the Title VI and IX claims must be dismissed.

### 2. Section 1983

To state a claim under Section 1983, a plaintiff must allege (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.

1998). This second element "excludes from [Section 1983's] reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). A plaintiff may nonetheless maintain a Section 1983 claim against a private actor if the plaintiff sufficiently alleges that the private actor "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Because the Complaint does not allege that NYU was a "willful participant in joint action with the State or its agents," *id.*, say, through a "plan, prearrangement, conspiracy, custom, or policy," *Forbes v. City of New York*, No. 05-CV-7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)), NYU cannot be liable under Section 1983.[8]

## V. Conclusion

For these reasons, NYU's motion to dismiss is GRANTED without prejudice.[9] Doe's motion to certify the class is DENIED as moot. The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 36 and 42 and close this case.

---

[8] Doe's attempt to skirt Rule 15 by abandoning his Section 1983 claim in his opposition brief and instead asserting a new claim under 42 U.S.C. § 1981 is unavailing. (Doc. 48 at 22–23); *see Santana v. City of New York*, No. 15-CV-6715, 2018 WL 1633563, at *4 (S.D.N.Y. Mar. 29, 2018) (collecting cases where the court concluded that the plaintiff could not amend his complaint to add additional causes of actions in his opposition papers).

[9] Although NYU urges me to dismiss the Complaint with prejudice because Doe "has been on notice of the defects in his conclusory pleading since the moment NYU first appeared in this case, if not before," (Doc. 43 at 22 (citation omitted)), I conclude that dismissal without prejudice is appropriate so that Doe can commence a new lawsuit should his claims ever ripen. My ruling that this dismissal is without prejudice should not be read as a finding that Doe's claims will ripen or that any future lawsuit will state a viable claim for relief, and I make no such finding.

SO ORDERED.

Dated: May 30, 2024
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge